UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES McKEOWN,

                Plaintiff,

                    v.

ANDREW SAUL, COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**18CV1280**

**CONSENT**

**Order**

    Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (plaintiff), 12 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 14, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

    The plaintiff ("James McKeown" or "plaintiff") filed an application for disability insurance benefits on March 31, 2015 [R. 17]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de</u>

novo and concluded, in a written decision dated November 1, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 14, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 13, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 12), and plaintiff duly replied (Docket No. 13). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, an infant claimant (born January 26, 2000) at the time of the application, attended school through the ninth grade and testified at the hearing that he planned to start a GED program once he turned 18 years old [R. 20, 41]. Plaintiff turned eighteen on January 26, 2018, after the hearing. Plaintiff stopped attending school due to excessive absences, according to his father, Randall McKeown (who testified at the hearing) [R. 52-53]. Plaintiff's father further testified that plaintiff did not skip school to hang out with friends, but Randall McKeown (or "Mr. McKeown") believed that plaintiff could not comprehend schoolwork [R. 41]. While at school, plaintiff needed additional time to complete school work [R. 44-45]. Plaintiff applied for jobs but has yet to be hired [R. 20], thus he had no substantial gainful activity [R. 20, 53-54]. The ALJ gave some weight to Mr. McKeown's opinion because he witnessed plaintiff's functioning on a daily basis for years [R. 25].

The ALJ found that plaintiff had severe impairment of the bicuspid aortic valve and mild aortic valve insufficiency and Attention Deficit Hyperactivity Disorder (or "ADHD") [R. 20].

2

Plaintiff also claims headaches, nosebleeds, and a concussion. The ALJ found that these ailments were not severe because of conservative treatment for them. [R. 21.] Mr. McKeown testified that plaintiff weighed 277 pounds and was 5'10", hence the ALJ factored in obesity in plaintiff's analysis [R. 40-41, 21], concluding that plaintiff's obesity did not meet any physical Listing or psychological Listing 12.00 [R. 21].

Plaintiff submitted an unsigned evaluation by an eighth-grade resource room teacher that the ALJ claimed was undated [R. 23] but was in response to a request dated May 3, 2015 [R. 143, 144]. The questionnaire addressed plaintiff's abilities for the infant domains. The ALJ gleaned from this questionnaire that plaintiff "was frequently absent from school, had difficulty with comprehension, communication, memory, applying information, completing tasks, concentration, interacting with others, tending to his personal hygiene, keeping pace, moving about, and being organized in the classroom" [R. 23, 143-55]. The ALJ assigned no weight to this evaluation (see Docket No. 9, Pl. Memo. at 18). The teacher noted that plaintiff was frequently absent, missing 30 days that school year [R. 144, 155]. The teacher also commented that plaintiff struggled with reading comprehension, spelling, written expression, and math computation, while also struggling with organization and visual motor delays and attention [R. 155].

Pertinent to this case, on acquiring and using information, the teacher noted that plaintiff had problems functioning in this domain, as compared with his peers, he had an "obvious" problem [R. 145]. He had what the anonymous teacher deemed "very serious" problem with expressing ideas in written form, while having "a serious problem" with providing organized oral explanations and adequate descriptions [R. 145]. That teacher noted that plaintiff was below

3

grade level for his reading, writing, and math and struggling with attention [R. 145]. As for attending and completing tasks domain, the teacher found that plaintiff had problems functioning in this domain, having a "serious" problem as compared with other children [R. 146]. The teacher then found that plaintiff had four areas that were "very serious" problems and two other areas deemed "serious" [R. 146]. The teacher noted that plaintiff had delay with hand-eye coordination, he struggled with handwriting lengthy assignments, attention, and staying organized; plaintiff received resource room and academic center services to address these issues [R. 147]. As for caring for himself, the teacher did not note whether plaintiff had problems functioning in this domain but noted that as compared with his peers plaintiff had "an obvious problem" [R. 151]. The teacher found that he had serious problems in taking care of his personal hygiene and caring for physical needs [R. 151, 152]. The teacher found that plaintiff had no problem in cooperating in and being responsible for taking needed medication and has a slight problem with using good judgment regarding his personal safety [R. 151].

On July 10, 2017, BOCES school counselor Jennifer Ricketts Swales answered a teacher's questionnaire regarding plaintiff's eleventh-grade year in a joint welding and GED program [R. 221, 24]. The ALJ relied upon this assessment in considering plaintiff's infant domains [R. 27-31], reporting generally that Swales indicated that plaintiff had difficulty with reading, comprehension, writing, math, focusing, staying on task, managing stress, and asking for help [R. 24]. The ALJ gave Ms. Swales' opinions some weight from her observations of plaintiff during the school year [R. 25-26]. Swales stated that plaintiff stayed home to hang out with friends (not due to illness) and the build-up of absences led to plaintiff being dropped from the GED and welding programs [R. 24, 222, 228]. She noted that plaintiff missed 21 days in a

4

row prior to being dropped from both programs and that he "had ability in both" academics and welding [R. 228].

As for acquiring and using information, Swales found that plaintiff had problems functioning in this area [R. 222]. Plaintiff had "serious" problem comprehending and doing math problems but was at worse had "moderate" problems in areas of reading and comprehending material, expressing ideas in written form, or learning new material [R. 222]. In her narrative, Swales states that plaintiff "sabotaged his progress" by his frequent absences [R. 222]. Plaintiff had an Individual Educational Plan (or "IEP") and received extra help for math, with test modifications and additional time [R. 222]. As for attending and completing tasks, Swales found that plaintiff had problems functioning here [R. 223]. While noting that plaintiff's focus was not too bad, Swales found he had moderate problems (at worst) in five areas in this domain [R. 223], finding that plaintiff was better at welding, but academics were more difficult for him [R. 223]. In the narrative, she also stated that plaintiff was influenced by student behavior [R. 223]. Finally, as to caring for himself, Swales also found he had problems functioning in this domain [R. 226]. He had "serious" problems coping with the daily demands of school and knowing when to ask for help [R. 226]. She made no notation as to plaintiff's cooperation in taking medication and found he had no problem using good judgment regarding his personal safety [R. 226]. Swales in her narrative for this domain is puzzled as to the reason for plaintiff's absences [R. 226].

Consultative examiner Dr. Robert Maiden, Ph.D., conducted intelligence testing on plaintiff in 2015 [R. 279-81, 24], administering the WISC IV test [R. 280]. There, plaintiff had a Verbal Comprehension Index of 81, a Perceptual Reasoning Index of 84, a Working Memory

5

Index of 91, a Processing Speed Index of 80, and a full-scale IQ score of 79 (borderline range) [R. 280, 24]. Dr. Maiden concluded that plaintiff was functioning at a normal to low average range, recommending plaintiff be accorded extra time during tests at school [R. 24, 280-81]. Dr. Maiden also noted that plaintiff's difficulty with dull, boring and routine tasks is consistent with plaintiff's diagnoses of learning disability and attention deficit disorder [R. 280].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff did not meet the requirements for Listings 104.00 (cardiovascular system), specifically Listings 104.02, 104.05, 104.06, 104.09, 104.13 [R. 21]. The ALJ next concluded that plaintiff's ADHD did not meet Listing 112.11 for neurodevelopmental disorders [R. 21]. The ALJ found that plaintiff's heart issues were stable, his ADHD in remission due to therapeutically effective medication, and plaintiff had no psychiatric or physical limitations from performing the six infant domains [R. 24]. Reviewing plaintiff's daily activities, the ALJ noted that plaintiff spent time playing basketball and other sports, cycling, riding four wheelers, camping, kayaking, fishing, swimming, going to the park, running, performing chores [R. 25, 54, 128, 188].

The ALJ applied the six infant domains, 20 C.F.R. § 416.926a(d), and found that plaintiff was less than marked in most of the domains, except for health and physical well being which the ALJ found had no limitation [R. 26-31, 30-31]. For the domains at issue (see Docket No. 9, Pl. Memo. 21-30), acquiring and using information; attending and completing tasks; and caring for yourself, the ALJ found each of these were less than marked, citing Ms. Swales' questionnaire from July 2017 [R. 221-31, 222, 223, 226, 26-27, 29-30]. As for acquiring and using information, that counselor observed that plaintiff had serious problems with math skills

6

[R. 222, 27], but the ALJ noted that Ms. Swales found only moderate limitation in other areas of this domain [R. 27, 222]. As for attending and completing tasks, the ALJ noted that Ms. Swales also found at worst moderate limitation in his ability to complete tasks in thirteen areas [R. 27, 223]. Finally, as for caring for himself, the ALJ again cited Ms. Swale's 2017 questionnaire responses that found plaintiff had serious problems only with dealing with stress and in knowing when to ask for help [R. 30, 226], with the counselor noting plaintiff's inexplicable absences [R. 226]. That counselor concluded that plaintiff missed 21 days in a row and was dropped from the high school equivalency program and a welding program at the school; the counselor also noted that plaintiff "had ability in both areas" [R. 228].

Since there was not one domain that was extreme or at least two domains that were marked, the ALJ concluded that plaintiff was not disabled [R. 31].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards for Infant Claimants

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A claimant under 18 years of age, such as the plaintiff here, is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations," and the impairment or impairments must have lasted or expect to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C). Under the applicable regulations, the infant claimant must show that he is not working, that he has a "severe" impairment or combination of impairments, and that his impairment or combination of impairments was of listing-level severity, that is met, medically equaled, or functionally equaled the severity of listed impairments, 20 C.F.R. § 416.924. Functional equivalence of limitations, in turn, are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being, id. § 416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain (not claimed here) constitutes a functional equivalent to a listed impairment, id. § 416.926a(d). Each domain is evaluated on whether the claimant has no limitation, is less than marked, marked, or extreme limitation, id. § 416.926a(b)(1).

"Marked" limitation for a domain is when a claimant's impairment(s) "interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or

when the interactive and cumulative effects of your impairment(s) limit several activities," 20 C.F.R. § 416.926a(e)(2)(i).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from working. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the claimant is suffering from a disability, the ALJ must employ a multi-step inquiry:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations, as assessed for the six domains of infant functioning.

20 C.F.R. § 416.924(a)-(d); see 20 C.F.R. §§ 416.920, 416.972, 416.923, 416.926, 416.926a; see Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the denial of disability coverage. This case focuses on plaintiff's mental impairments, primarily his ADHD and his learning disability (cf. Docket No. 12, Def. Memo. at 3 n.2). Plaintiff contends

9

that the ALJ mischaracterized the evidence within the infant domains, failing to weigh opinion evidence of record, misunderstood ADHD and held its effects against plaintiff (Docket No. 9, Pl. Memo. at 1, 17-21). Plaintiff argues that three domains (acquiring and using information; attending and completing tasks; and caring for yourself) were improperly considered (id. at 22-24, 25-28, 28-30); this Court will not address the other three domains. Generally, plaintiff faults the ALJ for not weighing the evaluation by his anonymous eighth grade teacher [R. 143-55], claiming that this evaluation was entitled to great weight (id. at 18). In reply, plaintiff contends that the ALJ applied her lay opinion rather than the observations of his teacher, school counselor, and consultative examiner Dr. Maiden in making findings not supported by substantial evidence (Docket No. 13, Pl. Reply Memo. at 1-2).

Defendant argues that substantial evidence supports the ALJ's finding that plaintiff's ADHD did not functionally equal any Listing because plaintiff lacked two marked domains (Docket No. 12, Def. Memo. at 17, 18-24), noting plaintiff's eighth-grade teacher did not observe serious problems in two domains at issue (acquiring and using information and caring for self) (id. at 17, 20, 23-24, 25) and, as for the third domain of attending and completing tasks, plaintiff's counselor and the consultative psychologist found that plaintiff did not have a marked limitation in this domain (id. at 17, 24). As for Dr. Maiden's findings, defendant argues that they show that plaintiff was capable of normal functioning (id. at 17).

To be deemed disabled, plaintiff needs to show that at least two infant domains were marked (that is more than moderate) or one domain was extreme, 20 C.F.R. § 416.926a(e) (see Docket No. 12, Def. Memo. at 18, plaintiff's bears burden of showing that domains were marked). Plaintiff is not contending that any domain is extreme.

10

I.      Acquiring and Using Information Domain

Under this domain, the Commissioner evaluates "how well a child is able to acquire or learn information, and how well a child uses the information he has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community," 20 C.F.R. § 416.926a(g) [R. 26] (Docket No. 9, Pl. Memo. at 22; see Docket No. 12, Def. Memo. at 18).

Plaintiff points to his eleventh-grade counselor Ms. Swales who noted that he had very serious problems with comprehending and doing math problems [R. 222] (Docket No. 9, Pl. Memo. at 22). He also cites his eighth-grade teacher, who noted that plaintiff had only a sixth-grade reading level [R. 144] (id. at 23). Plaintiff points to testing that he had borderline intellectual test results from Dr. Maiden [R. 280] (id. at 22, 23-24). He concludes that he had at least marked limitations in this domain (id. at 24).

Defendant responds that the ALJ had the duty to weigh the evidence and resolve any conflicts in the evidence (Docket No. 12, Def. Memo. at 18-19). Defendant reviewed the record and found from plaintiff's teachers that he had difficulty in school, but it was due to his absenteeism (id. at 19) [R. 173, 205, 207-08, 160] or lack of effort (id.) [R. 174]. Defendant points out that Ms. Swales opined that plaintiff had "no 'serious' –i.e. marked—limitations in any aspects of acquiring and using information other than comprehending and doing math problems" (id.) [R. 222].

Both parties parse the areas listed in the domain as noted by plaintiff's teachers and school counselor, noting the areas that show (or disprove) a marked limitation. This Court concludes that substantial evidence **supports the ALJ's ultimate finding that plaintiff is less**

11

**than marked for this domain**. Ms. Swales' assessment of plaintiff found only a serious problem in one area, comprehending and doing math, while noting most of the other areas for this domain as being moderate problems [R. 222, 27]. Also, Mr. McKeown testified that plaintiff learned better from books than on computer and that he struggled with assignments on a tablet while he had done "exceptionally well" in a prior school district based exclusively on books [R. 47] (see Docket No. 12, Def. Memo. at 21). The ALJ noted, but did not weigh, the anonymous eighth-grade teacher's evaluation (see Docket No. 9, Pl. Memo. at 18). That teacher, however, found that plaintiff had an obvious problem generally as compared with his peers, noting more serious problems with plaintiff's written expression while noting his math comprehension was only a "slight problem," and noting that plaintiff was below grade level for these areas [R. 145].

  The problems plaintiff has in this domain appear to arise from his absences from school, with Ms. Swales stating plaintiff had potential if he attended but his absences "sabotaged his progress" [R. 222]. Mr. McKeown attributed these absences to plaintiff's lack of comprehension [R. 41]. Plaintiff point to his IEP reports as supporting a finding of marked limitation (Docket No. 9, Pl. Memo. at 24, citing [R. 169-82, 156-68, 204-16]). His eighth grade IEP evaluation, however, noted that his low grades were due in part to his absences, creating in science and social studies classes "gaps in his learning" [R. 160; see R. 161]. Plaintiff's eleventh-grade GED program IEP evaluation noted that he missed school because "he goes back to sleep after initially waking up" [R. 205] and that his poor attendance has directly affected his grades [R. 209]. Mr. McKeown stated in the September 13, 2016, IEP report that plaintiff's attendance problems were because he had problems learning and did not want to go to

school [R. 207]. Plaintiff's teachers could not tell if plaintiff had knowledge of the material because he failed to turn in his work [R. 208]. The focus of these IEP evaluations are plaintiff's need to focus (e.g., [R. 173, 160]) with his academic performance reflecting his lack of concentration.

Thus, any limitation in his ability to acquire and use information is attributed to his absences. This may be a chicken-egg scenario, whether his absences cause his difficulties or whether those difficulties cause his absences. Nevertheless, the ALJ had substantial evidence to find that these limitations under this domain are less than marked.

II.     Attending and Completing Tasks Domain

As for this domain, the Commissioner considers "how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time," 20 C.F.R. § 416.926a(h) [R. 27] (Docket No. 9, Pl. Memo. at 25; Docket No. 12, Def. Memo. at 21).

Plaintiff now argues that the ALJ ignored the more limiting opinions, such as Dr. Maiden's July 2015 findings [R. 280], plaintiff's eighth-grade teacher's findings, and plaintiff's own testimony of being distracted easily [R. 55] (Docket No. 9, Pl. Memo. at 25-27). Eleventh-grade counselor Ms. Swales noted plaintiff had moderate limitation in refocusing to task, changing from one activity to another, in her July 2017 questionnaire (relied upon by ALJ) [R. 223] (id. at 25). Plaintiff's eighth-grade teacher earlier noted plaintiff having a very serious problem in organizing his own things and school materials [R. 146] (id. at 26). Plaintiff also

13

argues that the ALJ mischaracterized the reason for plaintiff missing school; plaintiff concludes that absences were due to his inability to perform not merely to hang out [R. 41 (father's testimony), 52-53 (plaintiff's testimony), 169-84, 156-68, 204-16] (id. at 27). Plaintiff ties his struggles with attending and completing tasks to symptoms of his ADHD (id.), as this diagnosis was mentioned in his IEP in 2014-16 [R. 169, 156, 204] (id.). He argues that the ALJ mischaracterized his absences and failed to attribute it to his frustrations from his ADHD and learning disability (id. at 28).

Defendant again points out Ms. Swales opined that plaintiff had no serious limitation in this domain (Docket No. 12, Def. Memo. at 21) [R. 223]. Swales noted that plaintiff's focus was not too bad, and he was better with hands-on learning rather than academics [R. 223]. His anonymous eight-grade teacher, however, felt plaintiff had more serious problem in this domain [R. 146-47]. The ALJ, as previously noted (see Docket No. 9, Pl. Memo. at 17), did not evaluate these findings. Thus, it is not clear if the less than marked limitation conclusion would differ if the ALJ affirmatively weighed the eighth-grade evaluation. This constitutes a gap in the record. Thus, substantial evidence **does not exist to support the ALJ's finding as to this domain** since it resets entirely upon Ms. Swales' opinion.

Comparing the eighth-grade teacher's opinion with Ms. Swales from the eleventh grade for this domain, they differ on areas involving plaintiff's attention and concentration. Unlike the acquiring and using information domain, the difference between these two educators are sufficiently stark that the failure of the ALJ to assess the eighth-grade teacher's opinion forms an error that precludes the ALJ's conclusion being based upon substantial evidence. For acquiring and using information, plaintiff could have progressed in his writing and verbal expression from

14

eighth to eleventh grade reflected in the different assessments by those educators. For attending and completing tasks, however, plaintiff had attention issues in the eighth grade that he did not have to the same degree in the eleventh grade. Again, without the ALJ's assessment of the eighth-grade opinion, it is unclear whether it was reflected in the ALJ's conclusion on the degree of limitation in this domain.

III.     Caring for Yourself Domain

As for his ability to care for himself, the Commissioner examines "how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area," 20 C.F.R. § 416.926a(k) [R. 29] (Docket No. 9, Pl. Memo. at 28; see Docket No. 12, Def. Memo. at 22).

Plaintiff contends here that the ALJ again based her decision upon the eleventh-grade counselor's findings only, ignoring other, more limiting opinions (id. at 28-30). Plaintiff's eighth grade teacher noted plaintiff's hygiene issues [R. 151] (id. at 29). He points out his IEP finding that he struggled with self-sufficiency in school and needing preferential seating [R. 169-82, 156-68, 204-16] (id. at 29-30). Mr. McKeown testified that plaintiff could help with what he was told to do, needing reminders, doing poorly with list of instructions [R. 48-50] (id. at 29-30). Mr. McKeown, however, said that plaintiff did not need reminders about personal care, showering, or brushing his teeth [R. 48]. Although the ALJ gave some weight to Mr. McKeown's observations, this appears inconsistent with finding plaintiff had less than marked limitations in this domain (see id. at 30).

15

Defendant points out that Dr. Maiden observed that plaintiff cared for himself without "a whole lot of oversight" by his father, the sole custodial parent [R. 279] (Docket No. 12, Def. Memo. at 23).

Comparing the opinions of plaintiff's eighth-grade teacher and eleventh-grade counselor under this domain, the educators differ on plaintiff's ability to care for his personal hygiene and his coping skills and knowing when to ask for help. Each educator found different areas that were serious problems for plaintiff. The eighth-grade teacher's chief objection is plaintiff's hygiene [R. 151, 152] whereas Ms. Swales was concerned about plaintiff's absences [R. 226], with Ms. Swales not answering the one express medical question whether plaintiff cooperates in or is responsible for taking needed medication [R. 226].

Plaintiff points to his IEP reports, about plaintiff needing reminders and redirection (Docket No. 9, Pl. Memo. at 29) and to Mr. McKeown's testimony [R. 48-50] that plaintiff could help when told what to do and reminded to do it (id. at 29-30). This domain, however, concerns how well the infant claimant can care for his own health and well-being. Aside from the eighth-grade reference to hygiene, the record here does not state plaintiff had problems maintaining his health. Mr. McKeown testified that plaintiff now took care of personal hygiene without reminders [R. 48]. As noted by Dr. Maiden, plaintiff spends most of the day without supervision [R. 279], again without incident or harm to himself.

As a result, the ALJ **had substantial evidence in this record to support finding that plaintiff was less than marked in the domain of caring for himself**.

IV.	In Sum

To establish disability for an infant claimant, plaintiff needed to show that he had marked limitations in two infant domains. Of the three domains at issue here, only one domain, attending and completing tasks, the ALJ required additional evidence in the record to establish the scope of limitation. Substantial evidence supported the ALJ as to the other domains, acquiring and using information and caring for himself. Thus, plaintiff fails to establish his disability; his motion (Docket No. 9) is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 12) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
March 13, 2020